UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| WARREN BROWN, | ) |
| | ) |
|     Plaintiff, | )   Civil Action No. 3:21-CV-037-CHB |
| | ) |
| v. | ) |
| | )   **MEMORANDUM OPINION AND** |
| CHRISTINE WORMUTH,[1] | )   **ORDER** |
| | ) |
|     Defendant. | ) |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on the Motion to Dismiss for Failure to State a Claim, And, In The Alternative, for a More Definite Statement ("Motion to Dismiss") filed by Defendant Christine Wormuth, Secretary of the Department of the Army, [R. 17]. Plaintiff Warren Brown responded to the motion, [R. 19], and the Secretary replied, [R. 20]. This matter is therefore fully briefed and ripe for review. For the reasons set forth herein, the Court will deny the Secretary's Motion to Dismiss, [R. 17].

**I. BACKGROUND**

    **A. Procedural Background**

Brown filed this action on January 20, 2021. [R. 1]. In his Complaint, Brown alleged that while being employed as a Training Instructor at the 83rd Army Reserves Readiness Training Center in Fort Knox, Kentucky, he was discriminated against based on his race in violation of Title VII of the Civil Rights Act and the Kentucky Civil Rights Act. *Id.* ¶¶ 21–29, 37–45. In addition, Brown claimed he was discriminated against based on his disabilities in violation of the

---

[1] Christine Wormuth succeeded Ryan McCarthy as the Secretary of the Army in 2021. As such, Secretary Wormuth is automatically and properly substituted as the Defendant herein. *See* FED. R. CIV. P. 25(a) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

Americans with Disabilities Act ("ADA") and the Kentucky Civil Rights Act. *Id.* ¶¶ 30–36, 46–52. On November 5, 2021, the Secretary filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim, [R. 13]. Subsequently, on November 24, 2021, Brown filed an Amended Complaint, which alleged only race and disability discrimination in violation of Title VII and the Rehabilitation Act of 1973, respectively. [R. 14, ¶¶ 23–38]. On December 22, 2021, in accordance with the parties' Agreed Order, [R. 15], the Secretary filed the present Motion to Dismiss, [R. 17]. Brown responded, [R. 19], and the Secretary replied, [R. 20].

In light of the Amended Complaint and this most recent motion, [R. 17], the Secretary's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim, [R. 13], was denied as moot, [R. 21]. The Court now considers the pending Motion to Dismiss, [R. 17].

### B. The Amended Complaint

Brown's Amended Complaint, [R. 14], alleges the following facts: Since 2011, Brown, an African American male, has been employed as a Training Instructor, GS-1712-09, with the 83rd Army Reserves Readiness Training Center ("Army Reserves") in Fort Knox, Kentucky. *Id.* ¶¶ 10–11. He "suffers from anxiety disorder/Post Traumatic Stress Disorder," which "impacts his ability to focus and causes him to worry excessively." *Id.* ¶12. In addition, Brown suffers from Spondylolisthesis of the L5 and S1 of his spinal cord, which "causes him to have a 'stiff and sour back'" and renders him unable to stand for long periods of time (i.e., more than an hour) without back pain. *Id.* In 2016, Brown provided his management with medical documentation to support his request for reasonable accommodations due to his disabilities. *Id.* ¶ 13. His request was granted in 2016 and remained in effect at the time his Amended Complaint was filed on November 24, 2021. *Id.*

As a Training Instructor at the GS-09 level, Brown's primary duty is to teach a minimum of 1,000 hours per year. *Id.* ¶ 14. In this role, Brown has performed at a "high level," receiving top-rated performance appraisals, performance awards, and step increases. *Id.* ¶ 15. As a result of his "positive performance," Brown has routinely been given additional duties and responsibilities. *Id.* Brown alleges that he "performs higher level duties than the GS-09 level" because he not only teaches two different courses to both military and civilian students but has also developed two courses and teaches more classes than other GS-09 or GS-11 instructors. *Id.* ¶ 16.

Instructors like Brown can be hired at Brown's level, GS-09, or the level of GS-11. *Id.* ¶ 14. In his Amended Complaint, Brown implies that instructors at the GS-09 level (Training Instructors) can be upgraded to the GS-11 level (Training Specialists)[2] via a desk audit of their position performance. *Id.* ¶ 17. However, some GS-09 instructors have been upgraded to the GS-11 level without a desk audit. *Id.* Specifically, Kevin Lindsay, a Caucasian, non-disabled coworker, was promoted to GS-11 (and thus receives a higher-level wage) without a desk audit even though he continues to perform GS-09 level duties. *Id.* In contrast, Brown maintains a "heavier workload than any other GS-09 or GS-11" and performs GS-11 level duties (e.g., designing, developing, and updating programs of instruction), but is only compensated at a GS-09 level. *Id.* at 4 ¶ 18. Unlike Brown, all GS-11 Training Specialists are Caucasian and non-disabled. *Id.* ¶ 19. Further, Brown has sought to be promoted to the GS-11 level but was denied advancement. *Id.* ¶ 21. In addition, despite Brown requesting a desk audit in the past, one has yet

---

[2] The Court understands from Brown's Amended Complaint and the Final Agency Decision incorporated therein that instructors at the GS-09 level are labeled as Training Instructors while instructors at the GS-11 level are labeled as Training Specialists. *See* [R. 14, ¶¶ 11, 19; R. 17-2, p. 6].

to be performed. *Id.* ¶ 20. Brown continues to perform the duties of a GS-11 level instructor while only being compensated as a GS-09 instructor. *Id.*

Based on these alleged facts, Brown asserts, in Count I, a claim of race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq. Id.* ¶¶ 23–31. In Count II, Brown asserts a claim of disability discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq. Id.* ¶¶ 32–38. In Response, the Secretary filed a Motion to Dismiss, [R. 17], arguing that Brown has failed to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). The Secretary also argues, in the alternative, that if the Court denies its Motion, the Court should order Brown to file a more definite statement before she is required to answer and assert applicable defenses. *Id.* at 12.

For the reasons outlined below, the Court will deny the Secretary's Motion to Dismiss and the Secretary's request for a more definite statement. *Id.*

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal for "failure to state a claim upon which relief may be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" so long as the complaint's factual allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

4

the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 577). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). The process of determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to the [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

### III.   ANALYSIS

#### A.  The Elements of a Prima Facie Case

Notably, a plaintiff asserting a federal employment discrimination claim is not required to plead facts establishing his prima facie case at the pleading stage. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002) ("The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement . . . . Consequently, the ordinary rules for assessing the sufficiency of a complaint apply.") (internal quotations and citations omitted); *Harmon v. Honeywell Intelligrated*, No. 1:19-cv-670, 2021 WL 10321757, *6 (S.D. Ohio Sept. 14, 2020) (citations omitted). Instead, a plaintiff "need allege only (a) the statutory basis for [the] claims, and (b) the factual predicate of those claims, such that the defendants are 'apprise[d] . . . of the [ ] claims and the grounds upon which they rest.'" *Id.* (quoting *Dickinson v. Zanesville Metro. Hous. Auth.*, 975 F. Supp. 2d 863, 871 (S.D. Ohio 2013)) (internal quotation marks omitted).

Nevertheless, the Court may look to the elements of a given claim to determine whether the plaintiff's complaint satisfies the plausibility standard cited above. *See, e.g.*, *Dillworth v. Wormuth*, Civil Action No. 3:20–cv–629–CHB, 2021 U.S. Dist. LEXIS 230864, at *30, 36 (W.D. Ky. Dec. 2, 2021) (citations omitted). Stated another way, "though a plaintiff is not *required* to plead a *prima facie* case . . . , if a plaintiff does adequately plead [his] *prima facie* case, then the plausibility requirement is met." *Jodry v. Fire Door Sols., LLC*, 2020 U.S. Dist. LEXIS 244609, at *11 (M.D. Tenn. Dec. 30, 2020) (citation omitted); *see also Turner v. Dejoy*, No. 2:21–cv–02223–SHL–atc, 2021 U.S. Dist. LEXIS 253076, at *7 (W.D. Tenn. Nov. 2, 2021) ("[W]hether a plaintiff can state a prima facie case for discrimination 'is illustrative of whether [he] has provided an adequate factual basis for [his] claims.'" (citation omitted)); *Towns v. Memphis/Shelby Cty. Health Dep't*, No. 17-cv-02626, 2019 U.S. Dist. LEXIS 25121, at *11 (W.D. Tenn. Jan. 25, 2019), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 24253 (W.D. Tenn. Feb. 14, 2019) ("While a Title VII plaintiff need not establish a prima facie case at the motion to dismiss stage, courts have looked to the prima facie requirements when determining whether a Title VII plaintiff has pleaded an actionable claim."). The Court therefore considers whether Brown has adequately pleaded prima facie cases of race discrimination under Title VII and disability discrimination under the Rehabilitation Act.

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To establish a prima facie case of race discrimination under Title VII, a plaintiff must establish that:

> (1) he is a member of a protected class; (2) he was qualified for the job and performed it satisfactorily; (3) despite his qualifications and performance, he suffered an adverse employment action; and (4) he was replaced by a person outside

the protected class or was treated less favorably than a similarly situated person outside of his protected class.

*Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (footnote and citation omitted);

*see also Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 508 (6th Cir. Aug. 26, 2021).

The Rehabilitation Act similarly protects federal employees from discrimination based on disability. To establish a prima facie case of disability discrimination under the Rehabilitation Act, a plaintiff must demonstrate that:

> "(1) that he is disabled, (2) that he is otherwise qualified for the job, with or without reasonable accommodation, (3) that he suffered an adverse employment action, (4) that his employer knew or had reason to know of his disability, and (5) that, following the adverse employment action, either he was replaced by a nondisabled person or his position remained open."

*Bledsoe v. Tenn. Valley Authority Bd. of Directors*, 42 F.4th 568, 578 (6th Cir. 2022) (quoting *Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007)). As with the fourth element of a race discrimination claim, the fifth element of a disability discrimination claim "may also be satisfied by showing that similarly situated non-protected employees were treated more favorably." *Jones*, 488 F.3d at 404 (quoting *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995)) (internal quotation marks omitted).

### B. The Secretary's Arguments

In this case, Brown asserts factual allegations that satisfy the first two elements of a prima facie case of discrimination based on race: (1) he is African American, and (2) he started his position at the Army Reserves in 2011, and has since received excellent performance reviews, step increases, and awards. [R. 14, ¶¶ 10, 15, 25]. Brown also asserts factual allegations that satisfy the first two elements of a prima facie case of disability discrimination: (1) he suffers from both mental and physical disabilities, and (2) he was otherwise qualified for his position, with or without reasonable accommodations. *Id.* ¶¶ 12, 15, 35. He also alleges that he sought

reasonable accommodations for his disabilities and "provided medical documentation to management" to support that request, thereby satisfying the fourth element of his disability discrimination claim—i.e., that his employer knew or had reason to know of his disabilities. *Id.* ¶ 13. The Secretary does not dispute that these elements are sufficiently alleged. *See* [R. 17, pp. 2–3].

Instead, the Secretary argues that Brown has failed to satisfy the third element of his prima facie cases—i.e., that he suffered an adverse employment action—because he has failed to allege any such adverse employment action. *See* [R. 17, pp. 7–11]. More specifically, the Secretary argues that Brown's allegations fall short of alleging a failure to promote or upgrade. *Id.* The Secretary also acknowledges Brown's allegations that he "performs GS-11 duties, but is only compensated at the GS-09 level," but states that such allegations do not "identif[y] or give[] notice of an adverse employment action." *Id.* at 8.

The Secretary further alleges that Brown has not exhausted his administrative remedies, an argument that is closely intertwined with the Secretary's argument relating to the existence of an adverse employment action. More specifically, the Secretary argues that Brown's complaint with the Equal Employment Opportunity Commission ("EEOC") fails to identify an adverse employment action and instead includes only the "vague and general" allegation that Brown "has been classified and compensated at a lower grade than his coworkers." [R. 17, p. 6 (quoting R. 17-2, Final Agency Decision)]. As a result, the Secretary argues, Brown has not properly exhausted his administrative remedies. *See, e.g.*, *id.*

Lastly, the Secretary argues that Brown fails to satisfy the fourth element of a race discrimination claim and the fifth element of a disability discrimination claim.[3] *See* [R. 20, pp.

---

[3] The Secretary raised this issue for the first time in her reply brief. *See* [DN 20]. Courts have consistently refused to consider arguments raised for the first time in a reply brief. *See Johnson v. International Laboratories, LLC*, No.

8

2–3]. As noted above, to satisfy these elements, a plaintiff must show that he was either replaced by a person outside of his protected class (for race discrimination claims) or a non-disabled person (for disability discrimination claims), or that the was treated less favorably than a similarly situated non-protected employee. The Secretary argues that these comparator elements[4] are unsatisfied because the allegations in the Amended Complaint do not support an inference that Brown and Kevin Lindsay, the GS-11 employee identified in the Amended Complaint, were similarly situated in all material aspects. [R. 20, p. 2].

The Court first considers whether Brown has alleged an actionable adverse employment action before determining whether the administrative remedies relating to that action have been properly exhausted and before considering the comparator elements of Brown's claims.

### C. Adverse Employment Action

In her Motion to Dismiss, the Secretary argues that the Court should interpret Brown's Amended Complaint as raising a failure to promote claim under either Title VII or the Rehabilitation Act. *See* [R. 17, pp. 8–9]. In fact, much of the Secretary's Motion focuses on Brown's alleged failure to sufficiently plead a failure to promote claim. However, in his Response, Brown clarified that he does not bring a failure to promote claim in his Amended Complaint. *See* [R. 4, pp. 6–7 ("However, Brown does not bring a claim for failure to promote, but rather for his disparate and discriminatory compensation in light of the GS-11 duties he was routinely performing, which is a qualified adverse employment action.")]. The Court therefore understands that Brown alleges that he was discriminated against with respect to his compensation due to his race and disability in violation of Title VII and the Rehabilitation Act,

---

7:19-cv-0004-GFVT, 2019 WL 1877289, at *2 n.2 (E.D. Ky. Apr. 26, 2019) (citations omitted). Nevertheless, even considering the Secretary's new argument, the Motion to Dismiss fails, as explained herein.

[4] For ease of reference, the Court will collectively refer to these fourth and fifth elements as the "comparator elements" of Brown's claims.

9

respectively. *See* [R. 4, pp. 6–7; R. 14, p. 4, ¶ 18 ("Brown is required to perform the duties of a GS-11 Training Specialist, however, he continues to be … paid at the GS-9 level.")]. In other words, the adverse employment action alleged by Brown is not a failure to promote, but rather, a disparity in compensation, or wage discrimination.[5] The Court therefore considers whether a disparity in pay is a qualifying adverse employment action under Title VII and the Rehabilitation Act.

The Sixth Circuit has defined an adverse employment action as a "materially adverse change in the terms and conditions of [plaintiff's] employment." *Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004) (quoting *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999)). A "bruised ego" or a "mere inconvenience or an alteration of job responsibilities" is not sufficient to constitute an adverse employment action. *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 797 (6th Cir. 2004)). Instead, "[e]xamples of adverse employment actions include firing, failing to promote, reassignment with significantly different responsibilities, a material loss of benefits, suspensions, and other indices unique to a particular situation." *Id.* (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

In addition, courts have held that pay disparities between an African American employee and a similarly situated white employee may form the basis for a Title VII race discrimination lawsuit. *See Moore v. Univ. of Memphis*, No. 10–2933–AJT–TMP, 2013 WL 6550434, at *13 (W.D. Tenn. Aug. 16, 2013), *report and recommendation adopted*, 2013 WL 6538391 (W.D.

---

[5] This clarification regarding the specific adverse employment action at issue should also resolve much of the Secretary's concerns about the dates on which said actions occurred. *See, e.g.*, [R. 17, p. 9 ("Brown's failure to offer a date for any request [for a desk audit or upgrade], or response to it . . . deprives the Court and [D]efendant of any way to discern what specific incident or adverse action (if any) Brown alleges, and whether or not it was timely exhausted.")].

10

Tenn. Dec. 13, 2013); *see also Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 513 (6th Cir. 2021) (analyzing race-based wage discrimination claim brought under Title VII); *Lacey v. Robertson*, No. 99-1424, 2000 WL 876491, *2 (6th Cir. June 21, 2000) (same); (*Bridgeman v. City of Bedford Heights*, No. 1:18-cv-2481, 2019 WL 1469381, *4 (N.D. Ohio Apr. 3, 2019) ("Unequal pay claims based on race are brought pursuant to Title VII . . . ."). Courts have also concluded that pay disparities between disabled employees and non-disabled employees may constitute an adverse employment action under the Rehabilitation Act. *See Coppett v. Tennessee Valley Authority*, 987 F.Supp.2d 1264, 1281 (N. D. Ala. 2013) (stating that there "is no dispute that being paid less than non-disabled counterparts would constitute an adverse employment action" in context of a Rehabilitation Act claim). The Secretary does not cite to any law suggesting that wage discrimination is not an actionable adverse employment action under either Title VII or the Rehabilitation Act, and the Court is not aware of any law that would support such an argument.

In the present case, Brown alleges that he "has suffered an adverse employment action" because he "is required to perform the duties of a GS-11 Training Specialist[;] however, he continues to be employed and paid at the GS-9 level." [R. 14, ¶ 26]. More specifically, he alleges that he performs "higher level duties than the GS-09 level," including teaching more courses than other GS-09 or GS-11 instructors and developing courses. *Id.* ¶ 16. He further alleges that other employees that continue to perform GS-09 level duties are being compensating at the GS-11 level, while he "performs GS-11 duties, but is only compensated at the GS-09 level." *Id.* ¶¶ 17–18. Thus, he alleges that he receives less compensation than his white, non-disabled coworkers, even though he "maintains a heavier workload" than those coworkers. *Id.* ¶ 18. As the above-cited law makes clear, such pay disparities may form the basis for a claim of race discrimination under Title VII or disability discrimination under the Rehabilitation Act. The

Court therefore finds that Brown has sufficiently pleaded an adverse employment action under both Title VII and the Rehabilitation Act.

### D. Exhaustion of Administrative Remedies

Having identified the adverse employment action alleged in this case, the Court turns to the Secretary's exhaustion argument.[7] As this Court has previously explained, "exhaustion of administrative remedies is a prerequisite to filing a district court lawsuit alleging discrimination under Title VII, and . . . a plaintiff may only bring a Title VII action in district court after he has exhausted the administrative remedies provided under 42 U.S.C. § 2000e-16." *Dillworth v. Wormuth*, No. 3:20-cv-629-CHB, 2021 U.S. Dist. LEXIS 230864, *17–18 (W.D. Ky. Dec. 2, 2021) (citation omitted). Those same administrative remedies are available to federal employees seeking relief under the Rehabilitation Act, *see* 29 U.S.C. § 794a, and such plaintiffs must also exhaust those administrative remedies before filing suit. *See Smith v. U.S. Postal Service*, 742 F.2d 257, 262 (6th Cir. 1984).

To exhaust his administrative remedies in this case, Brown was required to file a complaint (or charge) with the EEOC. *See* 42 U.S.C. § 2000e-16; *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 456 (6th Cir. 1999) ("An individual may not file suit under Title VII if she does not possess a 'right to sue' letter from the EEOC." (citation omitted)). There is no dispute that Brown did, in fact, file a complaint with the EEOC on or about October 19, 2018, and the agency issued a final decision on October 22, 2020. *See* [R. 17-2]. However, the Secretary argues that Brown failed to identify an actionable adverse employment action in his EEOC complaint and, as a result, his claims were not properly exhausted. *See* [R. 17].

---

[7] The Court considers the exhaustion argument after considering whether Brown has sufficiently pleaded an adverse employment action because the exhaustion analysis depends upon proper identification of the adverse employment action at issue in the Amended Complaint.

12

To properly exhaust, the EEOC complaint "must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Dillworth*, 2021 U.S. Dist. LEXIS 230864, at *18 (quoting *Golden v. Mirabile Investment Corp.*, 724 F. App'x 441, 445 (6th Cir. 2018)) (internal quotation marks omitted). When considering whether a plaintiff adequately identifies his claims in his EEOC complaint, "the Court construes the EEOC complaint liberally, and 'consider[s] claims that are reasonably related to or grow out of the factual allegations in the EEOC charge.'" *Id.* (quoting *Golden*, 742 F. App'x at 445). In other words, a plaintiff suing in district court may include discrimination claims "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998) (quoting *EEOC v. McCall Printing Corp.*, 633 F.2d 1232, 1235 (6th Cir. 1980)) (internal quotation marks omitted).

Notably, the "[f]ailure to exhaust administrative remedies . . . is an affirmative defense, and the defendant bears the burden of pleading and proving this failure." *Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008); *see also Bushong v. Del. City Sch. Dist.*, 851 F. App'x 541, 545 (6th Cir. 2021). In the Sixth Circuit, however, courts are "reluctant to dismiss complaints based on affirmative defenses at the pleading stage and before any discovery has been conducted." *Lockhart v. Holiday Inn Exp. Southwind*, 531 F. App'x 544, 547 (6th Cir. 2013) (citation omitted). In fact, affirmative defenses on a Rule 12(b)(6) motion are only addressed "where 'the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief.'" *Id.* (quoting *Marsh v. Genentech, Inc.*, 693 F.3d 546, 554–55 (6th Cir. 2012)).

On this point, the Secretary argues that Brown failed to identify an adverse employment action in his EEOC complaint. [R. 17, p. 6]. Specifically, the Secretary contends that Brown's EEOC charge that "he has been classified and compensated at a lower grade than his coworkers"

13

is too "vague" and "general" to constitute an adverse employment action, and therefore, he failed to properly exhaust an adverse employment action at the administrative stage. [R. 17, pp. 6–7]. As the Court has already explained, however, the adverse employment action at issue in this case is the pay disparity between Brown and white, non-disabled employees. The question then becomes whether Brown identified this specific adverse employment action in his EEOC complaint.

The EEOC complaint has not been filed in the record. However, the Secretary has provided a copy of the Final Agency Decision ("FAD") issued in response to Brown's EEOC complaint. [R. 17-2].[8] In the FAD, the agency characterizes Brown's claims as follows:

> [Brown] claimed that he was subjected to discrimination by the United States Army Reserve Command, 83rd Army Reserve Readiness Training Center, Fort Knox, Kentucky, on the bases of race (African American) and disability (mental and physical), when since June 1, 2018, he has been classified and compensated at a lower grade than his coworkers.

*Id.* at 1. In a section summarizing "Complainant's Claim and Management's Response," the agency repeats many of the allegations contained in Brown's Amended Complaint and expressly states that Brown "contends he is performing GS-11 duties, but is only compensated at the GS-09 level." *Id.* at 4. Later in the FAD, the agency states, "[Brown] claimed that he was subjected to discrimination because he has been classified and compensated at a lower grade than his coworkers." *Id.* at 7. While the EEOC complaint is not before the Court, the FAD clearly indicates that the claims raised in Brown's Amended Complaint mirror those raised in his EEOC charge—namely, that he was discriminated against on the basis of his race and disability status

---

[8] While, generally, "a court may not consider matters outside the pleadings in a motion to dismiss," a court may do so "where a plaintiff's complaint refers to documents that are later attached to a defendant's motion to dismiss" because "those documents are considered part of the pleadings." *Gray v. Wal-Mart Stores, Inc.*, No. 3:11-CV-367-H, 2012 WL 4212926, at *2 (W.D. Ky. Sept. 18, 2012). Here, Brown referred to the FAD in his Amended Complaint, [R. 14, ¶ 9], and the Secretary attached it to her Motion to Dismiss, [R. 17–2]. Thus, it is appropriate for the Court to consider it at this stage.

as evidenced by the pay disparities between himself and other non-protected employees. At the very least, the claims asserted in the Amended Complaint are "'reasonably related to or grow out of the factual allegations in the EEOC charge.'" *Dillworth*, 2021 U.S. Dist. LEXIS 230864, at *18 (quoting *Golden*, 742 F. App'x at 445). The Court therefore finds that Brown has sufficiently exhausted his administrative remedies.[9]

### E. Comparator Element

Having identified the specific adverse employment action alleged in the Amended Complaint, and having determined that Brown exhausted his claims relating to that action, the Court turns to the Secretary's remaining argument, namely, that Brown failed to satisfy the comparator elements of his claims. *See* [R. 20, pp. 2–3]. As noted above, a plaintiff may satisfy the comparator elements for either a claim of race discrimination or disability discrimination by demonstrating that he was replaced by a non-protected employee or was treated less favorably than a similarly situated non-protected employee. In this case, there is no allegation that Brown was terminated and replaced by a non-protected employee, and it appears that he is still employed as a Training Instructor with the 83rd Army Reserves Readiness Training Center. *See* [R. 14, ¶¶ 11, 13]. Thus, to satisfy the comparator elements of his claims, Brown must ultimately show that he was treated less favorably than similarly situated non-protected employees.

More specifically, a plaintiff claiming pay discrimination "must claim that [he] performed a job that required substantially equal skill and effort, but was paid less than similarly situated employees" outside of his protected class. *See Bridgeman v. City of Bedford Heights*, No. 1:18–cv–2481, 2019 U.S. Dist. LEXIS 57390, at *14–16 (N.D. Ohio Apr. 3, 2019) (citing

---

[9] The Court also notes that, to the extent the EEOC complaint might demonstrate that the claims asserted in that complaint differ from those asserted in the Amended Complaint, the burden rests on the Secretary to demonstrate as much, and the Secretary has not provided a copy of the EEOC complaint. *Lockett*, 259 F. App'x at 786.

15

*Corning Glassworks v. Brennan*, 417 U.S. 188, 195 (1974); *Balmer v. HCA, Inc.*, 423 F.3d 606, 611–12 (6th Cir. 2005), *abrogated on other grounds by Fox v. Vice*, 563 U.S. 826 (2011)). To determine if a non-protected employee is similarly situated to the plaintiff, the Court must evaluate "the relevant factors" of "skill, effort, and responsibilities of each job and the working conditions under which each job is performed." *Conti v. Universal Enters.*, 50 F. App'x 690, 699 (6th Cir. 2002); *see also Moore*, 2013 WL 6550434, at *13. However, even at the summary judgment stage, "[p]recise equivalence is not required. Rather, there need be 'only substantial equality of skill, effort, responsibility, and working conditions.'" *Conti*, 50 F. App'x at 698 (quoting *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981)).

At this early stage of the proceeding, and drawing all reasonable inferences in Brown's favor, the Court finds that Brown has sufficiently pleaded facts that satisfy the plausibility standard with respect to the comparator elements of both his Title VII and Rehabilitation Act claims. Brown alleges that he was treated less favorably than Kevin Lindsay, a Caucasian, non-disabled coworker. [R. 14, pp. 3–4, ¶¶ 17–18]. Specifically, Brown, a GS-09 level employee, alleges that even though he performs "higher level duties than the GS-09 level" and "GS-11 duties," he is still paid less than Lindsay, a GS-11 level employee, who "continues to perform GS-09 level duties." [R. 14, p. 3, ¶¶ 16–18]. These statements, taken as true and viewed in the light most favorable to Brown, indicate that both Lindsay and Brown perform similar jobs that required substantially equal skill and effort (despite their respective levels) without equal compensation.

In her Reply, the Secretary seems to dispute this assertion by stating that Lindsay "has a higher level of accountability because he is an instructor, course manager, and a training developer." [R. 20, p. 2]. However, in his Amended Complaint, Brown explicitly alleges that he

16

also "instruct[s] two different courses," "has developed two courses," and has "developed and updated programs of instruction." [R. 14, pp. 3–4, ¶¶ 16, 18]. While such allegations could have been more detailed, at this stage of the litigation, the Court finds these allegations plausibly state that Brown and Lindsay exercise the same skills and efforts to complete similar work, yet Lindsay, a non-disabled white employee, receives higher pay. *See Wiler v. Kent State Univ.*, No. 5:20–cv–490, 2021 WL 809350, at *5 (N.D. Ohio Mar. 3, 2021) (finding that the plaintiff sufficiently pleaded this factor by specifically alleging a male coworker engaged in "substantially similar work" as her).

In sum, the Court finds that Brown has pleaded the requisite elements of a prima facie case of race discrimination under Title VII and a prima facie case of disability discrimination under the Rehabilitation Act. He has, in other words, sufficiently pleaded the statutory basis for his claims, as well as the factual predicate of those claims, such that the Secretary is notified of Brown's claims and the grounds upon which they rest. *Harmon*, 2021 WL 10321757, *6 (S.D. Ohio Sept. 14, 2020) (citation omitted). Accordingly, the Court finds that Brown's Amended Complaint satisfies the plausibility standard required to survive this Motion to Dismiss. The Court will therefore deny the Motion.

### F. Request for More Definite Statement

In her Motion, the Secretary requests that, in the event any portion of the Amended Complaint survives, the Court order Brown to provide a more definite statement of his claims pursuant to Federal Rule of Civil Procedure 12(e). That rule provides, in relevant part, "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." This rule "must be read in conjunction with Rule 8 which sets forth the general rules of pleading in

17

federal civil actions." *Metropolitan Property & Casualty Ins. Co. v. Bolin*, No. 17-135-HRW, 2018 WL 11446052, *1 (E.D. Ky. Mar. 8, 2018) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)). Rule 8, in turn, requires only "notice pleading," or more specifically, a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (citing *Leatherman*, 507 U.S. at 168; Fed. R. Civ. P. 8(a)(2)). "Thus, to satisfy the pleading requirements a claimant need only give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005)).

In light of "the great liberality of Rule 8," a motion for more definite statement under Rule 12(e) "should be called upon only to correct abject unintelligibility in a pleading, not merely a claimed lack of detail." *Id.*; *see also Schwable v. Coates*, No. 3:05-CV-7210, 2005 WL 2002360, at *1 (N.D. Ohio 2005) (explaining that a Rule 12(e) motion "is designed to strike at unintelligibility rather than simple want of detail" (quoting *Scarbrough v. R-way Furniture Co.*, 105 F.R.D. 90, 91 (E.D. Wis. 1985))). Thus, such motions "must be denied where the subject complaint is not so vague or ambiguous as to make it unreasonable to use pretrial devices to fill any possible gaps in detail.'" *Metropolitan Property & Casualty Ins. Co.*, 2018 WL 11446052, *1 (quoting *Schwable*, 2005 WL 2002360, at *1). Given the notice pleading standard of Rule 8, the availability of extensive pretrial discovery, and the opportunity to challenge a claim through a motion for summary judgment, courts "generally disfavor motions for more definite statements." *Id.* at *2 (citations omitted). Such motions are left to the sound discretion of the court and are rarely granted. *Id.* (citations omitted).

In this case, the Secretary argues that the Amended Complaint "does not offer fair or adequate notice of any allegations" and asks that he be ordered "to provide a more definite

18

statement identifying dates and individual actors relevant to any claim." [R. 17, pp. 11–12]. However, as the Court has already discussed, Brown's Amended Complaint satisfies the pleadings standard of Rule 8 and as a result, survives the Secretary's Motion to Dismiss. Stated another way, the Amended Complaint *does* offer fair and adequate notice of Brown's allegations. The Court further finds that the Amended Complaint lacks the "abject unintelligibility" that a motion for more definite statement might properly target; rather, the Secretary simply seeks additional details relating to the allegations contained in the Amended Complaint. However, a motion for a more definite statement should not be used as a substitute for discovery. *Metropolitan Property & Casualty Ins. Co.*, 2018 WL 11446052, at *2 (citation omitted). In this case, the Amended Complaint puts the Secretary on notice of Brown's claims, thereby allowing the Secretary to file a responsive pleading, and "the tools of discovery can be invoked to further flesh out the allegations of the" Amended Complaint. *Id.* In other words, the Amended Complaint "is not so vague or ambiguous as to make it unreasonable to use pretrial devices to fill any possible gaps in detail." *Id.* at *1 (quoting *Schwable*, 2005 WL 2002360, at *1) (internal quotation marks omitted).

## IV.   CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that the Motion to Dismiss for Failure to State a Claim, And, In The Alternative, for a More Definite Statement filed by Defendant Christine Wormuth, Secretary of the Department of the Army, [**R. 17**], is **DENIED**.

This the 22nd day of September, 2022.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY